Andrew K. Alper (State Bar No. 088876)
aalper@frandzel.com
FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 Wilshire Boulevard
Seventeenth Floor
Los Angeles, California  90048-4920
Telephone: (323) 852-1000
Facsimile: (323) 651-2577

Attorneys for CAPITAL NETWORK
FUNDING, DUSTIN WHITE and
BLAKE JOHNSON

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| AXIS CAPITAL, INC., a corporation,<br><br>Plaintiff,<br><br>v.<br><br>CAPITAL NETWORK FUNDING, a California corporation dba CAPITAL NETWORK LEASING CORP. also dba CAPNET LEASING; DUSTIN WHITE; BLAKE JOHNSON; Does 1-100, Inclusive,<br><br>Defendants. | CASE No. CV 10-4201-GHK (PJWx)<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS CLAIMS FOR MONEY FOR FAILURE TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED OR, ALTERNATIVELY, MOTION FOR A MORE DEFINITE STATEMENT; DECLARATION OF DUSTIN WHITE**<br><br>**[F.R.Civ.P. 12(b)(6), 12(e)]**<br><br>Date:   August 9, 2010<br>Time:   9:30 a.m.<br>Crtrm: 650 |

TO PLAINTIFFS AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on August 9, 2010, at 9:30 a.m., or soon thereafter this matter may be heard in Courtroom 650 of the Honorable George H. King located at Edward R. Roybal Federal Building, 255 East Temple Street, Los Angeles, California, 90012, Defendants Capital Network Funding, California corporation dba Capital Network Leasing Corp., Dustin White and Blake Johnson (collectively "Defendants") will move this court for an order dismissing the First,

727475.1 \ 100573-0001

1

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

1  Second and Third claims for relief filed by Plaintiffs Axis Capital, Inc. ("Plaintiff")

2  pursuant to Federal Rules of Civil Procedure, Rule 12(b)(6), as said claims for relief

3  fail to state claims upon which relief can be granted in that the allegations in the

4  Complaint are directly contradicted by the written agreements attached to the

5  Complaint and are barred by the Parol Evidence Rule as set forth in California Code

6  of Civil Procedure § 1856 and Commercial Code §§ 2202 and §10202.  Further, the

7  first, second and third causes of action have not been pled with specificity as

8  required by Federal Rules of Civil Procedure, Rule 9(b).

9       In the alternative, Defendants move for a More Definite Statement pursuant to

10  Federal Rules of Civil Procedure, Rule 12(e) on the grounds that the allegations in

11  the Complaint are so vague and ambiguous that Defendants cannot be reasonably

12  required to frame a responsive pleading.

13       This Motion will be based upon this Notice, the accompanying Memorandum

14  of Points and Authorities, the Declaration of Dustin White, the pleadings and papers

15  on file herein, the Complaint and its exhibits, and such other further or documentary

16  evidence as may be presented at the time of the hearing.

17

18  DATED: July 8, 2010          FRANDZEL ROBINS BLOOM &
19                               CSATO, L.C.
20
21                               By: */s/ Andrew K. Alper*
22                                   ANDREW K. ALPER
23                                   Attorneys for CAPITAL NETWORK
                                     FUNDING, a California corporation dba
24                                   CAPITAL NETWORK LEASING CORP.
25                                   also dba CAPNET LEASING; DUSTIN
                                     WHITE and BLAKE JOHNSON
26
27
28

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ...................................................................................3

II.     TERMS OF THE LEASE ORIGINATOR AGREEMENT AND
        GUARANTY ..........................................................................................4

III.    THE FIRST CLAIM FOR RELIEF FAILS TO STATE FACTS UPON
        WHICH THE LEASE CAN BE GRANTED AND MUST BE
        DISMISSED ...........................................................................................7

IV.     THE SECOND AND THIRD CAUSES OF ACTION FOR
        ACCOUNT STATED AND INDEBTEDNESS FAIL TO STATE A
        CLAIM UPON WHICH RELIEF CAN BE GRANTED ...............................10

V.      AT THE VERY MINIMUM THE COMPLAINT IS SUBJECT TO A
        MORE DEFINITE STATEMENT................................................................11

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

1

2

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

3

**FEDERAL CASES**

Durning v. First Boston Corp. (9th Cir., 1987)
    15 F.2d 1265........................................................................................................7

Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc. (9th Cir., 1990)
    896 F.2d 1542........................................................................................................8

In re: Colonial Mortg. Bankers Corp. (1st Cir., 2003)
    324 F.3d 12............................................................................................................8

Kaufman & Broad – South Bay v. Unisys Corp. (ND CA, 1993)
    822 F.Supp. 1468 ..................................................................................................8

Paulemon v. Tobin (2nd Cir., 1994)
    30 F.3d 307............................................................................................................8

Thompson v. Illinois Dept. of Proft. Reg. (7th Circuit, 2002)
    300 F.3d 750..........................................................................................................8

**CALIFORNIA CASES**

Banco De Brasil, S.A. v. Latian, Inc. (1991)
    234 Cal.App. 3d 973 ...........................................................................................10

Bank of America v. Lamb Finance Company (1960)
    179 Cal.App. 2d 498 ...........................................................................................10

Bank of America v. Pendergrass (1935)
    4 Cal.2d 258 ........................................................................................................10

Del E. Webb Corp. v. Structural Materials Co. (1981)
    123 Cal.App. 3d 593 ...........................................................................................11

Henderson v. Superior Court (1978)
    77 Cal.App. 3d 583 .............................................................................................11

Perry v. Schwartz (1963)
    219 Cal.App. 2d 825 ...........................................................................................10

Truestone, Inc. v. Simi West Industrial Park II (1984)
    163 Cal.App. 3d ..................................................................................................10

Weitzenkorn v. Lesser (1993)
    40 Cal.2d 778 ......................................................................................................11

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

Withers v. Matthews (1961)
   192 Cal.App. 2d 139 ................................................................................ 10

**CALIFORNIA STATUTES**

California Code of Civil Procedure § 1856 .............................................. 2, 9

**OTHER STATE STATUTES**

Article 9 of the Commercial Code ............................................................. 6

Article 10 of the Commercial Code ........................................................... 6

Commercial Code § 1201(35) .................................................................... 8

Commercial Code § 1203 ........................................................................... 8

Commercial Code § 2202 ....................................................................... 2, 9

Commercial Code § 10202 ..................................................................... 2, 9

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

This action arises out of CAPITAL NETWORK FUNDING, a California corporation dba CAPITAL NETWORK LEASING CORP. ("CAPNET") referring a potential borrower for loan to Plaintiff Axis Capital, Inc. ("Plaintiff"). CAPNET is a broker of equipment lease and loan transactions. Defendants Dustin White and Blake Johnson are principals and officers of CAPNET and have been named herein as Guarantors with respect to the obligations alleged to be due by CAPNET to Plaintiff.

Plaintiff contends in its Complaint that Defendants and Plaintiff entered into a Lease Origination Agreement and Guarantee [sic] ("Agreement") whereby CAPNET agreed from time to time to submit applications to Plaintiff for financing of certain lease transactions with CAPNET retaining either an ownership interest in and to the subject leased equipment or an interest in and to a specified lease residual upon the timely completion of the subject leases at maturity (see page 2, para. 5, lines 16-22 of the Complaint). The Complaint alleges that on February 19, 2008, under the express terms of the Agreement, Plaintiff approved CAPNET'S application to provide equipment lease financing to K & S Transportation, LLC ("K&S") and Plaintiff thereafter entered into a written equipment lease with K&S. (See page 2, para. 6, lines 24-27 of the Complaint). Attached to the Complaint is a copy of the Lease and the Lufkin Invoice as to the equipment leased as Exhibits 2 and 3 (see page 3, para. 6, lines 1-7 of the Complaint). It is contended that in reliance on the Lufkin Invoice and the Lease, Plaintiff paid Lufkin $109,655.00 for the purchase of the leased equipment. (see page 3, para. 7, lines 8-12 of the Complaint).

Plaintiff contended that it did not have ownership or title to the equipment after it paid the supplier of the equipment, Lufkin, and that the manufacturer of the

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

1 trailers listed in the Exhibit 3 Lufkin Invoice took possession of the trailers and then

2 refused to release them to K & S (see page 3, para. A of the Complaint). As a result

3 of the repossession and failure to transfer perfected title, K & S refused to perform

4 under the Lease claiming that the Lease was unenforceable (see page 3, para. 9,

5 lines 20-22 of the Complaint).

6      Plaintiff then contended that CAPNET took certain "actions as set forth

7 above" which constituted the breach of several representations and warranties of the

8 Agreement, including, but not limited to breaching warranties set forth in Paragraph

9 5 of the Agreement." (See page 3, para. 10, lines 23-27 of the Complaint).

10      Paragraphs 11 through 13 of the Complaint then go on to state that demand

11 was made on the Defendants to pay all sums due on the Lease to Plaintiff as a result

12 of the breach of the warranties but they failed to do so (see page 4, para. 11-13).

13      The second and third causes of action are throw in causes of action for

14 accounts stated and indebtedness merely incorporating the allegations from the first

15 cause of action. No documents are attached to the Complaint remotely evidencing

16 an "account".

17      Plaintiff's Complaint is predicated on the terms of the Agreement. As

18 discussed below in Point 2, the terms of the Agreement directly conflict with the

19 allegations set forth in the Complaint and therefore the Complaint is subject to the

20 Motion to Dismiss for failure to state a claim upon which relief can be granted.

21 **II.**

22 **TERMS OF THE LEASE ORIGINATOR AGREEMENT AND GUARANTY**

23      Attached as Exhibit to the Complaint is the Lease Originator and Guaranty.

24 Agreement which is an agreement between Plaintiff, CAPNET and Dustin White

25 and Blake Johnson as guarantors.[1]

26 _____

27     [1] Dustin White and Blake Johnson contend that they are not individually

28 (footnote continued)

727475.1 | 100573-0001

4

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

1      Paragraph 10 of the Complaint described above, states there is a breach of

2  several specific representations and warranties by the Defendants in the Agreement.

3  However, nowhere in the complaint is it described what these breaches are. Even the

4  demand dated February 18, 2010, attached to the Complaint does not state what the

5  breaches are other than the contention that the vendor did not have title to the

6  trailers <u>which are subject to the Lease Agreement with K & S Transportation which</u>

7  <u>your company originated</u>.  Nothing could be further from the truth.  Once the court

8  reviews the Equipment Finance Agreement entered into by and between Plaintiff

9  with K & S Transportation, LLC, the Court will see that the representations and

10  warranties set forth in the Agreement which Plaintiff prepared are not applicable

11  to the Defendants.

12      Exhibit 2 to the Complaint has been described by Plaintiff as an Equipment

13  Lease Agreement. It is not an Equipment Lease Agreement.  It is an Equipment

14  Financing Agreement evidencing a loan. There is not one word in that document

15  that discusses a lease being entered into with K&S.  As the Court can see, Axis

16  Capital, Inc. is described as "Secured Party".  K & S Transportation, LLC is

17  described as "Debtor".  There is not leased equipment. There is, however, collateral

18  for the loan.  The Equipment Finance Agreement was not entered into by CAPNET

19  but was entered into by Plaintiff.  The Equipment Finance Agreement was not an

20  assigned transaction originated by CAPNET but is a direct loan between Plaintiff

21  and K&S.  CAPNET merely referred the customer to Plaintiff and Plaintiff did its

22  own due diligence, wrote its own loan documents, and did its own investigation.

23  Throughout the documents, the terms "Debtor" and "Secured Party" are used, not

24  lessee and lessor.  The payments to be made on the loan reflected 60 monthly

25  ——————————

26  obligated to pay any sums due from CAPNET to Plaintiff because they did not

27  personally guaranty the Agreement, but that is not the subject of the Motion to
Dismiss.

28

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

1   payments of $2,729.17.  There is no fair market value or any "purchase option" with

2   respect to the equipment because the transaction is not a lease—it is a loan.  There

3   are no references to Article 10 of the Commercial Code (Article 2A in Nebraska)

4   which concern equipment lease transactions.  All of the terms and conditions of this

5   Agreement refer to Debtors and Secured Parties and comply with the requirements

6   of secured transactions in personal property governed by Article 9 of the Uniform

7   Commercial Code.  Therefore, notwithstanding the allegations in the Complaint is

8   clear that this transaction is not a lease but is a loan.

9       Why is that important?  The "breached" representations and warranties set

10   forth in Paragraph 5 of the Agreement refer to representations and warranties with

11   respect to leases submitted to Plaintiff by CAPNET, not loans.  Paragraph 5A states

12   that "each **lease** submitted as a bona fide obligation . . .".  Paragraph 5B refers to

13   **leases** being submitted for business or commercial purposes.  Paragraph 5C states

14   that each **lease** shall be the sole and complete agreement with regard to the **lease** of

15   the equipment. Paragraph 5G states:  "That there has been no fraud on the part of

16   direct or indirect party to any **lease** which has been submitted to Axis Capital, Inc."

17   Paragraph 5H states that the **lease** originator is independent of the equipment vendor

18   and the lessee, and any and all transactions between the **lease** originator, equipment

19   vendor and lessee have been negotiated and consummated at arms length.

20       The Agreement states that if there is a breach of a warranty or representation

21   by **lease** originator, then the **lease** originator and guarantors were required to

22   repurchase the **lease** to which the breach relates.

23       Thus, the allegations set forth in the Complaint refer to a lease agreement

24   entered into by and between Plaintiff and K & S because it is obvious that Plaintiff

25   is well aware that without there being a **lease** none of the representations and

26   warranties would be breached. The problem that Plaintiff is faced with is there is no

27   lease so there is no breach.  Thus in the declaration of Dustin White submitted

28   herewith, Mr. White testifies this reference to a lease with respect to warranties

1    being made is not simply a small mistake made by Plaintiff. Instead, the Agreement

2    was created to refer leases and not loans and that is why the representations and

3    warranties deal with leases and not all transactions. Moreover, at no time does

4    Plaintiff even attempt to state what representation or warranty was breached.

5    Therefore, the allegations of the Complaint directly contradict the terms of the

6    exhibits, and therefore the motion to dismiss pursuant to Federal Rules of Civil

7    Procedure, Rule 12(b)(6) must be granted.

### III.

### THE FIRST CLAIM FOR RELIEF FAILS TO STATE FACTS UPON WHICH THE LEASE CAN BE GRANTED AND MUST BE DISMISSED

11       The exhibits attached to the Complaint and entered into by the parties

12    contradict the pleadings.  The court in <u>Durning v. First Boston Corp.</u> (9th Cir., 1987)

13    15 F.2d 1265 stated:

> "A complaint should not be dismissed under the Rule
>
> 'unless it appears beyond a doubt that the plaintiff can
>
> prove no set of facts in support of his claim which would
>
> entitle him to relief' [citations] all allegations and material
>
> facts are to be taken as true and construed in the light most
>
> favorable to the non moving party. [citations]  If a
>
> complaint is accompanied by attached documents, the
>
> court is not limited by the allegations contained in the
>
> complaint [citations] these documents are a part of the
>
> complaint and may be considered in determining whether
>
> plaintiff can prove any set of facts in support of the claim".
>
> Id. at 1267 [citations].

26       This statement is consistent with case law in that material properly submitted

27    with the Complaint (i.e., exhibits under Federal Rules of Civil Procedure 10(c)) may

28    be considered as part of the complaint for purposes of a Rule 12(b)(6) motion to

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

1   dismiss ( See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc. (9th Cir., 1990)

2   896 F.2d 1542, 1555: Paulemon v. Tobin (2nd Cir., 1994) 30 F.3d 307, 308-309; In

3   re: Colonial Mortg. Bankers Corp. (1st Cir., 2003) 324 F.3d 12, 16: Kaufman &

4   Broad – South Bay v. Unisys Corp. (ND CA, 1993) 822 F.Supp. 1468, 1472.). A

5   Plaintiff may plead themselves out of court by attaching exhibits inconsistent with

6   their claims: "W"hen a written instrument contradicts allegations in the Complaint

7   to which it is attached, the exhibit trumps the allegations See Thompson v. Illinois

8   Dept. of Proft. Reg. (7th Circuit, 2002) 300 F.3d 750, 754.

9         One can see from a review of the Complaint, throughout the complaint is

10   alleged that Plaintiff entered into a lease transaction with K & S.  The transaction

11   was not a lease, it was a loan.  These allegations are false and contradicted by the

12   exhibits.

13         Even if the Court somehow believed that the transaction was fashioned as a

14   lease (which it is not), it is elementary law that in order to have a true lease, the

15   Court must look to Commercial Code, Section 1203, (see  Commercial Code

16   Section 1201(35) for definition of security interest) and "that a transaction or form

17   of a lease creates a security interest is determined pursuant to Section 1203."

18         Section 1203 of the Commercial Code found in pertinent part:

19               "(a) When a transaction in the form of a lease creates a

20               lease or security interest it is determined by the facts of

21               each case.

22               (b) A transaction in the form of a lease creates a security

23               interest that's a consideration that the lessee is to pay the

24               lessor for the right to possession and use of the goods as

25               an obligation for the term of the lease and is not subject to

26               termination by the lessee, and: (1) original term of the

27               lease is equal to or greater than the remaining economic

28               life of the goods; (2) lessee is bound to renew the lease for

727475.1 | 100573-0001
8

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

1   the remaining economic life of the goods and is bound to

2   become the owner of the goods; (3) the lessee has an

3   option to renew the lease for the remaining economic life

4   of the goods for no additional consideration or for nominal

5   additional consideration upon compliance with the lease

6   agreement; or (4) the lessee has an option to become the

7   owner of the goods for no additional consideration or for

8   nominal additional consideration upon compliance with

9   the lease agreement."

10   It is clear that the transaction is not a lease since the word lease, lessor, lessee,

11   or leased equipment is never used in the loan agreement between Plaintiff and K&S.

12   However, independent of this analysis, pursuant to Commercial Code§ 1203 it is

13   clear that the transaction is not a lease since there is no purchase option with respect

14   to the leased equipment as all K & S had to do was to make the monthly payment on

15   the loan. It was already the owner of the equipment and it pledged it as collateral.

16   Nothing in the loan agreement states that Plaintiff is the owner of the equipment.

17   Therefore, as a matter of law, even if Plaintiff contended the transaction was a lease

18   it is not.

19   In addition to the foregoing, if Plaintiff contends that there is some oral

20   agreement outside the terms of the Agreement between Plaintiff and CAPNET,

21   Plaintiff certainly has not alleged it in the Complaint. Further, Plaintiff will have

22   difficulty making such allegations because all of the Parol Evidence Rule. The

23   Parol Evidence Rule has evolved under California Code of Civil Procedure § 1856

24   which states: "(a) terms set forth in writing intended by the parties as a final

25   expression of their agreement with respect to such terms as are included therein may

26   not be contradicted by evidence of any prior agreement or of contemporaneous oral

27   agreement . . . ." In addition, there is a separate Parol Evidence Rule codified for

28   sales and leases in Commercial Code §§ 2202 and 10202. There have been no

727475.1 | 100573-0001

9

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

1   allegations stating that the Agreement is not the complete agreement between the

2   parties.  If such contentions were made by Plaintiff to attempt to amend the

3   complaint, it will run into the bar of the Parol Evidence Rule which would bar such

4   allegations (see e.g. <u>Bank of America v. Lamb Finance Company</u> (1960) 179

5   Cal.App. 2d 498; <u>Bank of America v. Pendergrass</u> (1935) 4 Cal.2d 258; <u>Banco De</u>

6   <u>Brasil, S.A. v. Latian, Inc.</u> (1991) 234 Cal.App. 3d 973).

7        Thus, it is clear that the first cause of action, and all other causes of action, are

8   barred because (a) the Agreement only refers to a breach of warranties and

9   representations with respect to lease transactions and the transaction is not  a lease

10   and (b) Plaintiff never states what representations and warranties have been

11   breached.

12                                    **IV.**

13   **THE SECOND AND THIRD CAUSES OF ACTION FOR ACCOUNT**

14   **STATED AND INDEBTEDNESS FAIL TO STATE A CLAIM UPON WHICH**

15                          **RELIEF CAN BE GRANTED**

16        An "account stated" is an agreement between the parties that a certain sum

17   shall be paid and accepted in discharge of an obligation.  To constitute an account

18   stated the following facts must appear: (1) at the time of the statement, an

19   indebtedness from one party to the other existed, (2) a balance was then struck and

20   agreed to be the correct sum owing from the debtor to the creditor, and (3) the

21   debtor expressly or impliedly promised to pay to the creditor the amount of thus

22   determined to be owning.  Hence, an account stated is an agreed balance of

23   accounts; an account which has been examined and accepted by the parties.  It

24   implies an admission that the account is correct and that the balance struck is due

25   and owing from one party to the other (see <u>Truestone, Inc. v. Simi West Industrial</u>

26   <u>Park II</u> (1984) 163 Cal.App. 3d, 715, 725; <u>Perry v. Schwartz</u> (1963) 219 Cal.App.

27   2d 825, 829; <u>Withers v. Matthews</u> (1961) 192 Cal.App. 2d 139, 141).

28        There are no facts alleging that there is an account stated. it is obvious that

there was no account stated because there is no account. the obligation alleged in the Complaint arises out of the alleged breach of a representation and warranty and not an account. It appears that the second and third causes of action are simply State Court "throw-ins".  California law is clear that if a common count is based on the same cause of action as an unspecific specific count in alternative pleading, the entire complaint is subject to be stricken (see <u>Weitzenkorn v. Lesser</u> (1993) 40 Cal.2d 778, 793; <u>Del E. Webb Corp. v. Structural Materials Co.</u> (1981) 123 Cal.App. 3d 593, 601; <u>Henderson v. Superior Court</u> (1978) 77 Cal.App. 3d 583, 590).  Therefore, both the second and third claims must be stricken as a matter of law.

V.

### AT THE VERY MINIMUM THE COMPLAINT IS SUBJECT TO A MORE DEFINITE STATEMENT

Pursuant to Federal Rules of Civil Procedure, Rule 12(b) at the very minimum, the Complaint needs is subject to a motion for more definite statement since the Complaint never states which of the representations or warranties were breached by the Defendants.  The Defendants certainly cannot ascertain which representation or warranties have been breached because the Complaint never specifies one.

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

727475.1 | 100573-0001

11

NOTICE OF MOTION AND MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

1    Thus, in order to state a claim for breach of contract, Plaintiff must specify

2  the nature of the breach.

3

4  DATED: July 8, 2010              FRANDZEL ROBINS BLOOM &
                                    CSATO, L.C.
5

6

7                                   By: */s/ Andrew K. Alper*

8                                        ANDREW K. ALPER
                                         Attorneys for CAPITAL NETWORK
9                                        FUNDING, a California corporation dba
                                         CAPITAL NETWORK LEASING CORP.
10                                       also dba CAPNET LEASING; DUSTIN
                                         WHITE and BLAKE JOHNSON
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

# DECLARATION OF DUSTIN WHITE

I, Dustin White, declare as follows:

1.     I am the Chief Executive Officer of Capital Network Leasing Corp. d/b/a Capital Network Funding ("CAPNET") and was the Chief Executive Officer on January 18, 2008.

2.     If called upon the testify to the matter stated herein I would competently testify thereto.

3.     I have entered into various assignment agreements and broker agreements with lenders since the business of CAPNET was to originate either leases or loans and then sell them to third parties. Occasionally, CAPNET would fund or hold a lease or a loan for its own account but all of the leases and loans were either brokered, discounted, or originated by CAPNET and sold to third parties.

4.     I am familiar with the relationship by and between Axis Capital, Inc., Plaintiff herein ("Plaintiff") and CAPNET. CAPNET originally entered into a similar Lease Originator Agreement with Plaintiff in September, 2003. The Lease Originator Agreement & Guaranty attached as Exhibit 1 to the Complaint and attached hereto and marked as Exhibit 1 was executed by both Blake Johnson, President of CAPNET, and me. Both agreements were drafted and prepared by Plaintiff and sent to us for execution. I had no part in the drafting of these documents.

5.     I have executed many similar Broker Agreements and Assignment Agreements with other funding sources. The Exhibit "1" agreement was executed for the purpose of brokering or discounting lease transactions to Plaintiff. Typically, a funding source will have different agreements when loans are brokered or discounted or funded as opposed to when leases are discounted or funded. This is because the representations and warranties will be different because the transaction is different. The Exhibit "1" agreement clearly was for the purpose of brokering or discounting leases and not loans.

727475.1 | 100573-0001

13

6.     On all transactions submitted to Plaintiff it did all of its credit review and due diligence.  It did not ask CAPNET to assist with the credit process. Typically, if CAPNET were to enter into a lease on its contract, it will do the credit review and due diligence along with the funding source. In this situation, when CAPNET simply referred a loan to Plaintiff, it was not involved in the credit review and due diligence process. CAPNET essentially sent an Application and the information it had along with anything else requested by Plaintiff with respect to the loan.

7.     The allegations of the Complaint which refer to representations and warranties in the Exhibit "1" agreement as to lease transactions have nothing to do with the matter at bar.  The transaction involving K & S Transportation, LLC ("K & S") attached hereto, marked Exhibit 2 and incorporated herein by this reference referred by CAPNET to Plaintiff was a loan. CAPNET made no representations or warranties regarding this transaction to Plaintiff.  CAPNET did not do any of the due diligence or credit information on this transaction.

8.     When Plaintiff learned that it could not get the documents necessary to perfect title to the trailers which were collateral, Plaintiff request that CAPNET assist it in trying to get title. Since CAPNET cooperates with all of its funding sources, it too retained counsel for the purpose of advising Lufkin, the manufacturer of the trailers that it was required to turn over the title documents but CAPNET got nowhere convincing Lufkin to do that. This was done as a courtesy to Plaintiff but not because it had any duty or obligation to do so.

9.     CAPNET nor any of its principals made no representations or representations or warranties to Plaintiff on this transaction and the paragraph 5 representations and warranties are inapplicable.

I declare under penalty of perjury under the laws of the State of California, in the United States of America the foregoing is true and correct.

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

1   Executed this ___ day of July, 2010, Los Angeles, California.

2

3

4                                               _____

5                                               Dustin White, Declarant

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

# EXHIBIT 1

# LEASE ORIGINATOR AGREEMENT & GUARANTY

This Agreement sets forth the agreement between AXIS Capital, Inc., Capital Network Leasing Corp. (hereinafter "Lease Originator"), Dustin White and Blake Johnson (hereinafter collectively referred to as "Guarantors") with respect to any transactions submitted to AXIS Capital, Inc. by Lease Originator. The parties hereby agree as follows:

1. **Scope.** This Agreement applies to all transactions submitted by Lease Originator to AXIS Capital, Inc. until such time as this Agreement is terminated or superseded by another agreement.

2. **Disclosure of Information.** Lease Originator shall, in connection with each transaction submitted, fully inform AXIS Capital, Inc. as to all material information known to Lease Originator concerning the transaction, including, but not limited to, information regarding the proposed lessee and the proposed lessee's credit worthiness, any vendor, and the equipment to be leased. This duty extends to any changes occurring or discovered after the transaction has been submitted.

3. **Documentation.** All transactions shall be documented to AXIS Capital, Inc.'s complete satisfaction in form acceptable to AXIS Capital, Inc., in AXIS Capital, Inc.'s sole discretion.

4. **Notices to Applicants.** In the event that federal laws and regulations require, with respect to any submitted transaction, that certain notices be provided to proposed lessees, including but not limited to disclosure of the right to request specific reasons for credit denial and notice of action taken and statement of reasons for such, Lease Originator warrants that all such notices will have been provided to the proposed lessee, or will be provided at the appropriate time, as prescribed.

5. **Lease Originator Warranties.** Lease Originator hereby warrants, with regard to each transaction to be submitted, as follows:

   a. That each lease submitted is a bona fide obligation of the respective lessee and any co-lessees and will be valid and enforceable according to its terms. Any guarantees thereof will be bona fide obligations of the guarantors and will be valid and enforceable according to their terms. All documents provided in connection with each transaction shall be duly executed by the appropriate parties, who will have been duly authorized to execute same, and will be enforceable in accordance with their terms.

   b. All leases to be submitted will be for business or commercial purposes only and not for personal, family, or household purposes.

   c. Each lease shall be the sole and complete agreement with regard to the leases of the equipment, and there will be no other agreements in force as a result of representations or warranties made by Lease Originator, with respect to the equipment or the lease thereof.

   d. In the event that a transaction submitted to AXIS Capital, Inc. is "rebrokered", as that term is generally understood in the industry, Lease Originator will have identified to AXIS Capital, Inc. any parties from whom Lease Originator accessed the transaction. Without limiting the generality of the foregoing, the term "rebrokered" includes all transactions submitted wherein it is contemplated that any remuneration will be paid by Lease Originator to any party other than Lease Originator's employees, in the event that the transaction is accepted by AXIS Capital, Inc. Failure to disclose a third party who is to be so compensated will constitute a breach of this Lease Originator Agreement.

   e. That the person signing this agreement has the authority to do so.

   f. That every signature on any document submitted to AXIS Capital, Inc. is an actual signature of the signor.

Lease Originator Agreement—Page 1 of 3

EXHIBIT ___1___

g.     That there has been no fraud on the part of any direct or indirect party to any lease which has been submitted to AXIS Capital, Inc.

h.     The Lease Originator is independent of the equipment vendor and the lessee, and any and all transactions between the Lease Originator, equipment vendor, and lessee have been negotiated and consummated at arms length.

6.     **Breach of Warranty or Representation.** If any of the above warranties or representations or any other covenant, obligation or duty is breached by the Lease Originator, then, upon AXIS Capital, Inc.'s demand, upon 15 days written notification from Axis Capital, Inc. , Lease Originator and Guarantors will repurchase any lease to which the breach relates. The repurchase price in each case shall include the unpaid balance of such lease, plus AXIS Capital, Inc.'s expenses ( including attorneys' fees ) incurred to enforce the lease or this agreement.

7.     **Authority of Lease Originator.** Lease Originator is, and shall act as, an independent contractor, and as such, shall have no authority to incur any obligations or to make any statements or representations on behalf of AXIS Capital, Inc., or to bind or commit AXIS Capital, Inc. in any manner, or make, alter or execute any document or agreement on behalf of AXIS Capital, Inc. Lease Originator shall not use AXIS Capital, Inc.'s name or any of AXIS Capital, Inc.'s trademarks as part of its firm, trade or corporate name. Lease Originator shall not accept service of any legal process in any action, which may be brought against AXIS Capital, Inc., or employ attorneys to defend such. You will promptly send AXIS Capital Inc., any payments or correspondence from lessee or other persons in regards to any lease transaction.

8.     **Acts of Representatives.** It is understood by Lease Originator that all of its duties and responsibilities arising out of this agreement extend as well to anyone acting on Lease Originator's behalf. Lease Originator specifically understands that in the event that it delegates any of its functions, such as obtaining documentation or making other arrangements with regard to a transaction to others, including vendors or other Lease Originators, Lease Originator is still fully responsible for any and all such actions as if Lease Originator had taken such actions itself.

9.     **Indemnity.** Lease Originator shall indemnify and hold AXIS Capital, Inc. harmless from and against any and all expense, injury and damage, including reasonable attorney fees, which AXIS Capital, Inc. may incur, pay or suffer as a result of acts of Lease Originator, its principals, employees or representatives.

10.     **Compensation of Lease Originator.** In return for Lease Originator's efforts in connection with any transaction submitted by Lease Originator and accepted by AXIS Capital, Inc., AXIS Capital, Inc. shall, if the transaction is at AXIS Capital, Inc.'s standard rates for transactions of similar size and risk, pay Lease Originator AXIS Capital, Inc.'s standard Lease Originator fee thereon in accordance with AXIS Capital, Inc.'s then current Lease Originator fee schedule.

11.     **Expenses of Lease Originator.** AXIS Capital, Inc. shall not be liable for any expenses incurred by Lease Originator in connection with any transaction submitted by Lease Originator. Any and all such expenses shall be Lease Originator's sole responsibility.

12.     **Duration of Agreement.** This agreement shall be effective at the time of its execution by AXIS Capital, Inc. and shall continue in effect until terminated by either party upon written notice. The rights and obligations of the parties hereunder with respect to transactions originated prior to termination of this agreement shall survive such termination.

13.     **Qualification of Lease Originator.** Lease Originator shall from time to time, upon request by AXIS Capital, Inc., submit information to AXIS Capital, Inc. as AXIS Capital, Inc. deems appropriate in order to assure that Lease Originator meets AXIS Capital, Inc.'s standard with respect to qualification to transact business with AXIS Capital, Inc.

17

14. **Choice of law and Venue; Arbitration; Attorney Fees.** This Agreement shall not be effective until signed by AXIS Capital, Inc. in its office in the State of Nebraska. This Agreement shall be considered to have been made in the State of Nebraska and shall be interpreted in accordance with the laws and regulations of the State of Nebraska. Lease Originator agrees to Nebraska jurisdiction with respect to any action, suit or proceeding arising out of this Agreement, and concedes that it, and each of them, transacted business in the State of Nebraska by entering into this Agreement. Any controversy or claim arising out of or related to this Agreement or the breach thereof, shall be settled by arbitration, in accordance with the rules then obtaining of the American Arbitration Association, all judgment upon the award rendered may be entered in any court of the forum, state or federal, having jurisdiction. In the event of legal action or arbitration to enforce the terms of this Agreement, Lease Originator agrees that venue may be laid in Hall County, Nebraska.

If enforcement action is taken by AXIS Capital, Inc. to enforce any term of this Agreement, the prevailing party in such action shall be entitled to a reasonable attorney fee, including attorney fees incurred at trial, on appeal and review, or incurred without actions, suits or proceedings, together with all costs and expenses incurred in pursuit thereof.

Agreed to by and between the undersigned parties this 18ᵗʰ day of _____Jan._____, 20 08

LEASE ORIGINATOR: Capital Network Leasing Corp.

By _____ Title _CEO._

By _____ Title _____

GUARANTOR: Dustin White

By _____ Title _Ceo_

GUARANTOR: Blake Johnson

By _____ Title _PRESIDENT_

AXIS Capital, Inc.

By _____ Date _1/23/10_

Lease Originator Agreement--Page 3 of 3

18

# EXHIBIT 2

**AXIS CAPITAL INC ("Secured Party")**

308 NORTH LOCUST STREET
GRAND ISLAND NE 68801

Agreement Number / Customer Number: 917609 / 014956

**A. Debtor:**
K & S TRANSPORTATION, LLC
90330 HWY 9
LINEVILLE AL 36266
CORNELIA KERLEY

**Supplier:**
LUFKIN TRAILERS OF ALABAMA
26 SAINT MARY ROAD
LINCOLN AL 35096

**B. Collateral (Quantity, Description & Serial No.)**
Equipment Description: (end/or as described in invoice(s) or equipment list attached hereto and made a part hereof collectively, the "Equipment")
Location: 90330 HWY 9, LINEVILLE, AL 36266

**C. Schedule of Payments:**

| Initial Term (in Months) | Total Number Of Payments | Amount of Each Payment | Total Initial Payment | $5,458.34 | Total Advance Amount |
|---|---|---|---|---|---|
| 60 | 60 | $2,729.17 | First: $2,729.17<br>Last: $2,729.17 | Doc. Fee: $430.00<br>Deposit: $.00 | $5,888.34 |

**D. DISCLAIMER OF WARRANTIES AND CLAIMS; LIMITATION OF REMEDIES. THERE ARE NO WARRANTIES BY OR ON BEHALF OF SECURED PARTY AND NEITHER THE SUPPLIER NOR ANY OTHER PARTY IS SECURED PARTY'S AGENT. DEBTOR ACKNOWLEDGES AND AGREES BY ITS SIGNATURE BELOW AS FOLLOWS: (A) SECURED PARTY MAKES NO WARRANTIES EITHER EXPRESS OR IMPLIED AS TO THE CONDITION OF THE COLLATERAL, ITS MERCHANTABILITY, ITS FITNESS OR SUITABILITY FOR ANY PARTICULAR PURPOSE, ITS DESIGN, ITS CONDITION, ITS CAPACITY, ITS QUALITY, OR WITH RESPECT TO ANY CHARACTERISTICS OF THE COLLATERAL; (B) DEBTOR ACCEPTS COLLATERAL "AS IS" AND WITH ALL FAULTS; (C) DEBTOR ACKNOWLEDGES THAT THE COLLATERAL WILL BE USED SOLELY FOR COMMERCIAL OR BUSINESS PURPOSES; (D) IF THE COLLATERAL IS NOT PROPERLY INSTALLED, DOES NOT OPERATE AS REPRESENTED OR WARRANTED BY THE SUPPLIER OR MANUFACTURER, OR IS UNSATISFACTORY FOR ANY REASON, REGARDLESS OF CAUSE OR CONSEQUENCE, DEBTOR'S ONLY REMEDY, IF ANY, SHALL BE AGAINST THE SUPPLIER OR MANUFACTURER OF THE COLLATERAL AND NOT AGAINST SECURED PARTY; (E) DEBTOR SHALL HAVE NO REMEDY FOR CONSEQUENTIAL OR INCIDENTAL DAMAGES AGAINST SECURED PARTY; AND (F) NO DEFECT, DAMAGE OR UNFITNESS OF THE COLLATERAL FOR ANY PURPOSE SHALL RELIEVE DEBTOR OF THE OBLIGATION TO MAKE PAYMENTS OR RELIEVE DEBTOR OF ANY OTHER OBLIGATION UNDER THIS AGREEMENT.**
**E. Amendments:** No term or provision of this Agreement may be amended, altered, waived or discharged except by a written instrument signed by all parties to this Agreement.

THIS AGREEMENT, THE TERMS OF WHICH HAVE BEEN FREELY NEGOTIATED BY EACH PARTY, IS SUBJECT TO THE TERMS AND CONDITIONS ON THE REVERSE SIDE OR FOLLOWING PAGE WHICH HAVE MADE A PART HEREOF AND WHICH DEBTOR AND SECURED PARTY ACKNOWLEDGE THEY HAVE READ AND ACCEPTED.
BY EXECUTION OF THIS AGREEMENT, THE UNDERSIGNED HEREBY CERTIFIES THAT HE/SHE IS AUTHORIZED BY DEBTOR TO APPROVE EQUIPMENT AND TO APPROVE, EXECUTE AND DELIVER TO SECURED PARTY A FINANCE AGREEMENT AND SUCH DOCUMENTATION AND ACTION COVERING SUCH EQUIPENT AS NECESSARY TO EFFECTUATE AND PERFORM SUCH FINANCE AGREEMENT.

**THIS IS A NON-CANCELABLE AGREEMENT.**

Secured Party: AXIS CAPITAL INC
By: _Melinda Krueger_
Title: Asst. Sec.

Debtor Signature: _Cornelia Kerley_
Title: MEMBER     K & S TRANSPORTATION LLC

Guaranty: In consideration of AXIS CAPITAL INC, its successors and assigns ("Secured Party"), entering into this Financing Agreement ("Agreement"), the party(ies) or individual(s) executing this Guaranty ("Guarantor," whether one or more) unconditionally and irrevocably guaranty to Secured Party, the prompt payment and performance of all obligations of the Debtor. Guarantor agrees that this is a guaranty of payment and not of collection, and that Secured Party can proceed directly against Guarantor without first proceeding against Debtor or against the Collateral covered by the Agreement. Guarantor waives all defenses and notices, including those of protest, nonpayment and demand. Guarantor agrees that Secured Party can renew, extend or otherwise modify the terms of the Agreement and Guarantor will be bound by such changes. If Debtor defaults under the Agreement, Guarantor will immediately perform all obligations of Debtor under the Agreement, including, but not limited to, paying all amounts due under the Agreement. Guarantor will pay to Secured Party all expenses (including attorneys' fees) incurred by Secured Party in enforcing Secured Party's rights against Guarantor. This Guaranty will not be discharged or affected by the death, dissolution, termination, bankruptcy or insolvency of Debtor or Guarantor and will bind Guarantor's heirs, personal representatives, successors and assigns. If more than one Guarantor has signed this Guaranty, each Guarantor agrees that his/her liability is joint and several. Guarantor authorizes Secured Party or any of Secured Party's designees to obtain and share with others credit bureau reports regarding Guarantor's personal credit, and make other credit inquiries that Secured Party determines are necessary. THIS GUARANTY IS GOVERNED BY THE LAWS OF THE STATE OF NEBRASKA. GUARANTOR CONSENTS TO THE JURISDICTION OF ANY STATE OR FEDERAL COURT LOCATED IN NEBRASKA OR IN ANY OTHER STATE WHERE SECURED PARTY HAS AN OFFICE. GUARANTOR EXPRESSLY WAIVES ANY RIGHT TO A TRIAL BY JURY.

Guarantor Signature: _Cornelia Kerley_
CORNELIA KERLEY

Guarantor Signature: _Timothy W Kerley_
TIMOTHY KERLEY

Certificate of acceptance: The undersigned Debtor certifies to Secured Party that all items of Collateral referred to above or on the attachment(s) hereto have been received and irrevocably accepted by the Debtor and were at the time of receipt in good order and condition and acceptable to use. Debtor approves payment by Secured Party to the Supplier. Debtor hereby certifies that Secured Party has fully and satisfactorily performed all covenants and conditions to be performed by it under the Agreement. Debtor agrees to enforce, in its own name, all warranties, agreements or representations, if any, which may be made by the Supplier in respect to the Collateral.

Date: 2-19-08
_Cornelia Kerley_
CORNELIA KERLEY, MEMBER

**REQUEST FOR ELECTRONIC PAYMENT**
Please attach a voided check from the account to be debited

The undersigned hereby authorizes and requests Secured Party to initiate electronic debit entries (and credit entries in error) or effect a charge by any other commercially accepted practice to the account indicated below at the financial institution named below ("Depository"). The undersigned hereby authorizes and requests the Depository to honor the debit and/or credit entries initiated by Secured Party. This authorization is for payments due under the referenced Agreement. This authority is to remain in force until such time as all amounts due under the Agreement are paid in full or until Secured Party and Depository have received written notification from the undersigned terminating this authorization in such time and manner as to afford Secured Party and Depository a reasonable opportunity to act on it.

Customer Name Printed: K & S TRANSPORTATION LLC
Depository Name and Branch: ✔ First State Bank
Depository Address (city & state): ✔ Lineville, AL 36266
Depository Telephone Number: ✔ 256-396-2187

Agreement Number: 917609
Account Number: ✔ 43030939
Customer Signature: _Cornelia Kerley_

Page 1 of 2

EXHIBIT ___2___

19

# TERMS AND CONDITIONS

Agreement Number: 9176009

1. **Definitions; Reports:** The words "you" and "your" refer to the DEBTOR, its successors and assigns, as shown on the reverse side or preceding page, as applicable (the "first page"). The words "we", "us" and "our" refer to the SECURED PARTY, its successors and assigns, as shown on the first page. You authorize us and our designees to obtain investigative credit reports, regarding you and each guarantor, from a credit bureau or a credit agency and to investigate the references given on any statement or data obtained and to share such reports with others.

2. **Acceptance:** We agree to lend to you, and you agree to borrow from us, an amount for the purchase of: equipment, items, products, software, services, and other personal property described or referenced on the first page ("Collateral"), for the term shown on the first page (Initial Term"). We shall have no obligations hereunder until we accept and sign this Agreement at our offices. If this Agreement is executed by you and thereafter sent to us by facsimile transmission, then until such time as we have received the original with your manual signature thereon, such facsimile transmission shall constitute, upon acceptance and execution by us in our offices, the original Agreement and chattel paper and shall be admissible for all purposes as the original Agreement. You agree to promptly forward to us the Agreement with your manual signature thereon and upon receipt, the Agreement with your manual signature thereon shall constitute the chattel paper in lieu of such facsimile transmission.

3. **Security Interest:** You hereby grant to us a security interest under the Uniform Commercial Code ("UCC") in the property described or referenced as Collateral and all accessions and additions thereto and replacements thereof and all proceeds and products of the foregoing (collectively, the "Collateral" and individually as "item" or "item of Collateral"). Such security interest is granted to secure payment and performance by you of your obligations hereunder and under any other present or future agreement with us.

4. **Payments:** You promise to pay us the payments shown on the first page, in advance, commencing as of the first day of the Initial Term and continuing on the first day of each month in which a payment is due, without need of an invoice; provided, as indicated in the Schedule of Payments, the payments included in the Total Initial Payment shall be paid upon your execution of this Agreement. We reserve the right to increase the payment shown in the Schedule of Payments by up to 15% or to decrease it due, without need of an invoice to reflect changes in the final amounts paid to the Supplier or amount borrowed. Any such adjustment shall be reflected on a subsequent invoice to be sent to you within 30 days. We also reserve the right to alter, insert or correct the Agreement Number, Debtor Name, Debtor Address, Equipment Location and Signature Date. If the contemplated transaction is not consummated, the Total Initial Payment may be retained, by us, as partial compensation for costs and expenses incurred in preparation for the transaction. On the first day of the Initial Term you agree to pay us accrued interest on the principal amount that has been previously advanced, hereunder, by us at the implicit contract rate for this Agreement. Your obligation to make payments and pay other amounts hereunder is absolute and unconditional and not subject to abatement, reduction or set-off for any reason whatsoever. If the date on which all payments have been made to the Supplier for the Collateral is the first day of a calendar month, then the Initial Term shall commence on such date; otherwise, the Initial Term shall commence on the first day of the following calendar month; and in such case the Initial Term shall continue for the number of months indicated on the first page. The Deposit shown on the first page shall not bear interest and we may apply the Deposit to cure any default, in which event you will promptly restore the Deposit to its full amount. After all of the obligations under this Agreement are fully paid and performed, any remaining balance of the Deposit shall be refunded to you.

5. **Location:** You agree to maintain records showing the location of each item of Collateral. You shall report such location to us upon our request. Your failure to maintain records showing the location of each item of Collateral and/or to report the location of each item of Collateral shall constitute a default.

6. **Maintenance; Installation:** You are responsible for installing and keeping the Collateral in good working order. You shall not make any alterations, additions or improvements to the Collateral, which detract from its economic value or functional utility. All additions and improvements made to the Collateral shall be deemed accessions thereto, and shall not be removed if removal would impair the Collateral's economic value or functional utility. If the Collateral is damaged or lost, you agree to continue making scheduled payments unless you pay the Casualty Value pursuant to Section 13.

7. **Insurance:** You agree to keep the Collateral fully insured against loss until this Agreement is paid in full and to have us named as loss payee. You also agree to obtain a general public liability insurance policy from anyone who is acceptable to us, with minimum limits of $250,000/$500,000 for bodily injury, and property damage coverage equal to or greater than the replacement value of the collateral. You agree to provide us with certificates or other evidence of insurance acceptable to us, before the Initial Term begins, and during the term. If at any time you have failed to deliver to us a valid certificate of insurance reflecting such insurance as being in effect, then we will have the right, but no obligation, to have such insurance policies so placed for the term of the Agreement at your expense; and if so placed, we will add to your payment and you will pay us our costs of obtaining such insurance and any customary charges or fees of ours or our designee associated with such insurance together with interest thereon at the maximum rate permitted by applicable law.

8. **Taxes and Fees:** You agree to pay when due or reimburse us for all taxes, fees, fines and penalties relating to use or ownership of the Collateral or to this Agreement, including documentary stamp taxes, now or hereafter imposed, levied or assessed by any federal, state or local government or agency. If any federal, state, county or local government or agency requires any taxes, charges or fees to be paid in advance, and we do pay such taxes, charges or fees, we reserve the right to adjust the payment shown in the Schedule of Payments, to reflect the payment of such taxes, charges or fees. Any such adjustment shall be reflected on a subsequent invoice to be sent to you within 30 days.

9. **Software:** All references to "Equipment" shall include software and/or software licenses. Notwithstanding any contrary language in the Agreement, Debtor understands that the Supplier shall continue to retain title to the equipment described as computer software or software license. The Debtor hereby grants to Secured Party a security interest in all of its right, title and interest in and to the Equipment, including the software, as some may be modified, corrected, supplemented or enhanced from time to time. Secured Party shall have all the rights of a secured creditor under the Uniform Commercial Code (the "UCC") with respect to the Equipment. Debtor shall not be permitted to assign its interest hereunder or sublease said License or use of the Equipment to any other person or entity without both Secured Party's and Supplier's prior written consent, which may be declined for any reason. Debtor shall have no right, title or interest in the Equipment or License except as expressly provided herein and in any license agreement with the Supplier. Debtor hereby acknowledges receiving a copy of said license agreement which is incorporated by reference herein. Debtor agrees to be bound by the terms and conditions of said License and agrees to indemnify and hold Secured Party harmless from and against all claims, losses, liabilities, damages, judgment, suits and all legal proceedings and expenses in connection therewith, arising out of the possession, use and operation of the Equipment or arising out of Debtor's breach of the terms of the license agreement. This indemnity shall be in addition to that provided in the Agreement.

10. **Personal Property:** The Collateral will be and shall remain personal property and, if required by us, you will obtain real property waivers satisfactory to us. You shall keep the Collateral free from any and all liens and encumbrances. You shall give us immediate notice of any attachment or other judicial

process, liens or encumbrances affecting the Collateral. You hereby authorize us and appoint us as your attorney-in-fact with the power of attorney to file this Agreement and any financing statement(s) or security agreement(s) with respect to the Collateral in any state in the United States. You further authorize us to file this Agreement and such financing statements or security agreements without your signature thereon. If your signature on any financing statement is required by law, you shall execute such supplemental instruments and financing statements we deem to be necessary and advisable and shall otherwise cooperate to defend our title by filing or otherwise. You also agree to pay us on demand filing, registration and releasing fees prescribed by the UCC or other law. Any Collateral that is subject to title registration laws shall be titled and registered as directed by us, and we shall maintain physical possession of the title until this Agreement is paid in full.

11. **Default; Remedies:** If you do not pay when due or if you breach or fail to perform any of your other covenants and promises under this Agreement or any other agreement entered into by you and held or serviced by us or if you declare bankruptcy or insolvency or if your business or your entity existence or failure any actions regarding the cessation or winding up of your business affairs, you will be in default, if you are in default, at our election, we can accelerate and require that you pay, as reasonable liquidated damages for loss of bargain, the "Accelerated Balance". This Accelerated Balance will be equal to the total of (i) accrued and unpaid amounts, and (ii) the remaining payments. We can also pursue any of the remedies fees and actual costs including repossession and collection costs, and all non-sufficient funds charges and similar charges.

12. **Late Charge:** If any part of a payment is late, you agree to pay a late charge equal to the lesser of (a) the greater of 10% of the payment or $25.00 or (b) the maximum amount permitted by applicable law.

13. **Assignment; Inspection:** YOU HAVE NO RIGHT TO SELL, TRANSFER, ASSIGN, LEASE OR ENCUMBER THE COLLATERAL OR THIS AGREEMENT. We may sell, transfer, assign, or encumber this Agreement. You agree that if we sell, transfer, assign, or encumber this Agreement, the assignee will have the rights and benefits that we assign to the assignee and will not have to perform any of our obligations. You agree that the rights of the assignee will not be subject to any claims, defenses or set-offs that you may have against us. We and our agents and representatives shall have the right at any time during regular business hours to inspect the Collateral and for that purpose to have access to the location of the Collateral.

14. **Risk of Loss:** You hereby assume and shall bear the entire risk of loss, theft, damage or destruction of the Collateral from any cause whatsoever and no loss, theft, damage or destruction of the Collateral shall relieve you of the obligation to make scheduled payments or any other obligation under this Agreement, and this Agreement shall remain in full force and effect except as provided below. You shall promptly notify us in writing of such loss, theft, damage or destruction. If damage of any kind occurs to any item of Collateral, you, at our option, shall at your expense (a) place the item in good repair, condition or working order, or (b) if the Collateral cannot be repaired or is lost, stolen or suffers a constructive loss under an insurance policy covering the Collateral, pay to us the "Casualty Value". The Casualty Value will be equal to the total of (i) accrued and unpaid amounts, and (ii) the remaining payments discounted to present value using the Federal Funds rate as of the date of payment.

15. **Choice of Law; Consent to Jurisdiction; Venue:** This Agreement shall be interpreted and all rights and liabilities of the parties hereto and thereunder shall be determined and governed by the validity, interpretation, enforcement and effect, by the laws of the State of Nebraska. Without limiting the right of Secured Party to bring any action or proceeding against Debtor in the courts of other jurisdictions, Debtor hereby irrevocably submits to the jurisdiction of any State or Federal court located in Nebraska or in any other state where Secured Party has an office. Secured Party and Debtor expressly waive any right to a trial by jury.

16. **Miscellaneous:** During the term of this Agreement, you agree to provide us with all financial statements and copies of federal or state tax returns as we may reasonably request. If we supply you with labels, you shall label any and all items of Collateral and shall keep the same affixed in a prominent place. If any provision hereof or any remedy herein provided is found to be invalid under any applicable law, such provision shall be inapplicable and deemed omitted, but the remaining provisions hereof, including remaining default remedies, shall be given effect in accordance with the manifest intent hereof. You agree that any delay or failure to enforce our rights under this Agreement does not prevent us from enforcing any rights at a later time. You also agree that the terms and conditions indicated above and on the first page are a complete and exclusive statement of our agreement and they may be modified only by written agreement signed by all of the parties hereto and not by any course of performance. You agree that the original of this Agreement may be microfilmed or electronically duplicated and a photostatic copy of such microfilm or electronic duplication may be introduced in lieu of the original thereof and without further foundation. Debtor and Guarantor (if any) also agree that a facsimile copy of the Agreement and Guaranty with facsimile signatures may be deemed an an original and will be admissible as evidence of the Agreement and Guaranty. The parties hereto expressly waive the secondary evidence rule. You acknowledge receipt of a copy of this Agreement. You agree that this Agreement will be binding upon your successors, designs, heirs and legal representatives. You agree that our waiver of any provision hereunder shall not constitute a waiver of any other matter. It is the express intent of the parties not to violate any applicable usury laws or to exceed the maximum amount of interest permitted to be charged or collected by applicable law, and any such excess payment will be applied to the payments, in inverse order of maturity, and any remaining excess will be refunded to you.

(Debtor's Initial)

PAGE 2 OF 2

20

# EQUIPMENT LIST

AGREEMENT NUMBER: 917609

**SECURED PARTY:**
AXIS CAPITAL INC
308 NORTH LOCUST STREET
GRAND ISLAND NE 68801

**DEBTOR:**
K & S TRANSPORTATION, LLC
90330 HWY 9
LINEVILLE AL 36266

**EQUIPMENT QUANTITY AND DESCRIPTION:**

| | | |
|---|---|---|
| 1 | 2008 STOUGHTON A/R VAN TRAILER | 1DW1A532X8S052869 |
| 1 | 2008 STOUGHTON A/R VAN TRAILER | 1DW1A53268S052870 |
| 1 | 2008 STOUGHTON A/R VAN TRAILER | 1DW1A53288S052871 |
| 1 | 2008 STOUGHTON A/R VAN TRAILER | 1DW1A532X8S052872 |
| 1 | 2008 STOUGHTON A/R VAN TRAILER | 1DW1A53218S052873 |

A photocopy or facsimile of this Equipment List will be legally admissible under the "best evidence rule." A signed copy of this Equipment List sent by facsimile shall be treated as an original document and shall be admissible as evidence thereof, and all signatures thereon shall be binding as if manual signatures were personally delivered.

AXIS CAPITAL INC

By: Melinda Kroeger

Title: Asst Sec
Date: 2-27-08

K & S TRANSPORTATION, LLC

By: Cornelia Kerley
CORNELIA KERLEY

Title: MEMBER
Date: 02/18/08

21

## PROOF OF SERVICE

I, the undersigned, declare and certify as follows:

I am over the age of eighteen years, not a party to the within action and employed in the County of Los Angeles State of California. I am employed in the office of Frandzel Robins Bloom & Csato, L.C., members of the Bar of the above-entitled Court, and I made the service referred to below at their direction. My business address is 6500 Wilshire Boulevard, Seventeenth Floor, Los Angeles, California 90048-4920

On July 9, 2010, I served true copy(ies) of the **NOTICE OF MOTION AND MOTION TO DISMISS CLAIMS FOR MONEY FOR FAILURE TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED OR, ALTERNATIVELY, MOTION FOR A MORE DEFINITE STATEMENT; DECLARATION OF DUSTIN WHITE** the original(s) of which is(are) affixed hereto. to the party(ies) on the attached service list.

☒ **BY MAIL:** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing with the United States Postal Service. Under that practice, it would be deposited with the United States Postal Service that same day in the ordinary course of business. Such document(s) were placed in envelopes addressed to the person(s) served hereunder for collection and mailing with postage thereon fully prepaid at Los Angeles, California, on that same day following ordinary business practices.

☐ **BY FAX TRANSMISSION:** At approximately _____, I caused said document(s) to be transmitted by facsimile. The telephone number of the sending facsimile machine was (323) 651-2577. The name(s) and facsimile machine telephone number(s) of the person(s) served are set forth in the service list. The document was transmitted by facsimile transmission, and the sending facsimile machine properly issued a transmission report confirming that the transmission was complete and without error.

**BY OVERNIGHT DELIVERY:** I deposited such document(s) in a box or other facility regularly maintained by the overnight service carrier, or delivered such document(s) to a courier or driver authorized by the overnight service carrier to receive documents, in an envelope or package designated by the overnight service carrier with delivery fees paid or provided for, addressed to the person(s) served hereunder.

I certify under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed on July 9, 2010, at Los Angeles, California.

Monica Clemens

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

727475.1 | 100573-0001

22

# SERVICE LIST

Stephen E. Jenkins, Esq.
HEMAR, ROUSSO & HEALD, LLP
15910 Ventura Boulevard
12th Floor
Encino. California 91436

23

NOTICE OF MOTION AND MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM